Wood, Admr., et al., Appellants, *v.* Shepard; The Professionals Insurance Company, Appellee.

[Cite as Wood *v.* Shepard (1988), 38 Ohio St. 3d 86.]

(No. 87-265—Submitted April 19, 1988—Decided August 3, 1988.)

*Allbery, Cross & Turner, Gerald L. Turner* and *John M. Ruffolo,* for appellants.

*Jenks, Surdyk & Gibson Co., L.P.A., Robert F. Cowdrey* and *Christopher F. Johnson,* for appellee.

DOUGLAS, J. The case before this court presents three issues. The first two involve the enforceability of setoff and anti-stacking provisions under the underinsured motorist coverage. For these provisions to be enforced, they must be clear, conspicuous and unambiguous. See *Karabin* v. *State Automobile Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 10 OBR 497, 462 N.E. 2d 403. While reasonable minds might differ on whether the setoff and anti-stacking language in the Woods' policy is clear and unambiguous,[2] we never-

the policy language considered underinsured motorists as a subgroup of uninsured motorists. The pertinent policy language states:

"UNINSURED MOTORISTS COVERAGE

"Part C is amended as follows:

"A. The first paragraph of the Insuring Agreement is replaced by the following:

---

[2] The court of appeals concluded that

theless affirm, without further comment, the judgments of the court of appeals and trial court on these questions.

The additional difficult issue before this court is whether the survivors of an insured decedent have one collective claim for wrongful death or whether each such survivor has a separate claim. We hold that each survivor has a separate claim and that all the separate claims may not be combined and limited to the single person limit of liability in the insured's underinsured motorist provision.

Any discussion of whether survivors of an insured have separate claims against the decedent's insurer for wrongful death must refer to R.C. 2125.01 and 2125.02, as well as R.C. 3937.18.

R.C. 2125.01 provides in pertinent part: "When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and

---

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

"B. Part 2. of the definition of 'uninsured motor vehicle' is replaced by the following:

" 'Uninsured Motor Vehicle' means a land motor vehicle or trailer of any type:

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the limit of liability for this coverage.

"C. Exclusion A.1. does not apply.

"D. The Limit of Liability provision is replaced by the following:

"LIMIT OF LIABILITY

"The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

"1. Covered persons;

"2. Claims made;

"3. Vehicles or premiums shown in the Declarations; or

"4. Vehicles involved in the accident.

"Except with respect to coverage under paragraph 2. of the definition of underinsured motor vehicle, any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

"With respect to coverage under paragraph 2. of the definition of uninsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

"Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A of the policy.

"3. The Other Insurance Provision is replaced by the following:

"OTHER INSURANCE

"If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

"If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *."

R.C. 2125.02(A)(1) mandates that "[a]n action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

R.C. 3937.18 provides in relevant part:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.

"(B) Coverages offered under division (A) of this section shall be written for the same limits of liability. No change shall be made in the limits of one of these coverages without an equivalent change in the limits of the other coverage."

It is clear from the provisions of R.C. 2125.02, quoted *supra,* that in a wrongful death action, the surviving spouse and the children of the decedent have the right to recover damages suffered by reason of the wrongful death, even though the action must be brought in the name of the personal representative of the decedent. This court, through Justice Wright writing for the majority, has held that "[a]ccording to the language of the uninsured motorist statute, this mandated coverage is '* * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, *including death,* resulting therefrom.' R.C. 3937.18(A)(1). (Emphasis added.) Therefore, it is clear that it was the intention of the General Assembly in requiring insurance companies to pro-

vide uninsured coverage that recovery be had for wrongful death." *In re Estate of Reeck* (1986), 21 Ohio St. 3d 126, 128, 21 OBR 429, 431, 488 N.E. 2d 195, 197. Of course, this same reasoning also applies to underinsured motorist coverage.

In holding that the surviving spouse and children herein each has a separate claim for damages suffered by reason of the wrongful death, we find support in our recent decision in *Reeck, supra.* In *Reeck,* the surviving spouse, as executrix of the decedent's estate, executed a settlement with the decedent's insurer under the uninsured motorist provision wherein she would receive the proceeds of the settlement. This court held that the decedent's daughter had a claim to the proceeds of the settlement pursuant to R.C. 2125.02. This claim was considered to be separate and distinct from the claim of the estate.

Our conclusion that the persons mentioned in R.C. 2125.02 have separate claims for damages emanates from the language of the statute itself. R.C. 2125.02 states that the surviving spouse, the children, and the parents of the decedent are "all * * * rebuttably presumed to have suffered damages by reason of the wrongful death * * *." Since each of these persons is presumed to have suffered damages resulting from the death, it logically follows that each such person has a compensable claim. Therefore, absent authorization allowing these separate claims to be treated as a single com-

bined claim for purposes of underinsured motorist coverage, the persons entitled to recover under R.C. 2125.02 have separate and distinct claims.

Appellee argues that the policy language permits appellee to restrict recovery for the wrongful death of Gina Wood to the per-person limitation of $100,000 regardless of the number of statutory beneficiaries who are also covered persons under the policy. Appellants contend that each of the survivors has a separate claim for wrongful death and that each claim has a maximum coverage of $100,000 up to a total limitation of $300,000.

We find that the claims cannot be limited in the manner proposed by appellee because doing so would significantly frustrate the purposes of R.C. 3937.18. "Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute. * * *" *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 23 O.O. 3d 495, 433 N.E. 2d 547, syllabus. As indicated *supra,* R.C. 3937.18 mandates coverage for wrongful death. *Reeck, supra,* at 128, 21 OBR at 431, 488 N.E. 2d at 197. Nowhere in R.C. 3937.18 is authority granted to limit claims for wrongful death to a single person limit of liability. This is an important indicator of legislative intent because the statute *expressly* allows insurance companies to include policy provisions that grant the insurer the right of setoff[3] and prohibit stacking of insurance coverages.[4] When viewed in light of R.C. 2125.02, which

---

[3] R.C. 3937.18(A)(2) in part provides:

"* * * The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, *less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.*" (Emphasis added.)

[4] R.C. 3937.18(G) provides:

"Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section may include terms and conditions that preclude stacking of such coverages."

grants the persons described therein separate claims for damages resulting from wrongful death, appellee's attempt to limit coverage to a single person limit of liability without any statutory authority to do so must be seen as clearly frustrating the purposes of R.C. 3937.18.

At this juncture, it is important to note the practical effect of appellee's right of setoff. Appellants apparently collected $100,000 from the tortfeasor's insurance carrier. Pursuant to statute and Professionals' policy provision, this amount is set off from the amount that may be recovered from appellee. If appellee's single person limit of liability position were to prevail, the setoff provision would allow appellee to avoid paying anything to its own insured. The $100,000 collected from the tortfeasor's insurer would be set off against the $100,000 single person limit of liability, thereby relieving appellee of any duty to its own insured notwithstanding that premiums have been paid for underinsured motorist coverage.

Two other arguments need to be addressed. It is contended that the wrongful death statute, and specifically R.C. 2125.02, could be used, under today's decision, to permit recovery by persons who are not in any way contractually in privity with an underinsured carrier. This, of course, is not the case. Only an *insured* under the underinsured motorist provision can recover under the policy for injury or wrongful death. Appellee, herein, does not dispute that James, Jessica and Carrie Wood are all covered persons under the policy.

Finally, the argument is made that our recent decision in *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, 521 N.E. 2d 789, is somehow controlling. To so argue is to completely miss the point of *Dues,* which is easily distinguishable.

Paragraph two of the syllabus in *Dues* states that "[a]n insurance policy provision that limits recovery for all causes of action arising out of bodily injury to one person to a single limit of liability is a valid restriction of uninsured motorist coverage." The distinction is that *Dues* concerned bodily injury while this case concerns wrongful death, for which each survivor is *statutorily* afforded a separate claim for damages. For this reason, the holding of *Dues* has no application to this case.

Accordingly, we hold that each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision of an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision.

For the foregoing reasons, the judgment of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part, and cause remanded.*

SWEENEY, LOCHER and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I agree with the majority in affirming the court of appeals on the issues of setoff and stacking. However, the majority misinterprets the legislative intent of Ohio's wrongful death statute, R.C. 2125.02, in allowing a multiplicity of actions to be brought seeking damages arising

out of the death of the appellants' decedent.

The syllabus law of this opinion should be:

1. Where a wrongful death is asserted and an action is brought pursuant to Ohio's wrongful death statute, R.C. 2125.02, although a surviving spouse, the children, the parents, and the next of kin of the decedent may be entitled to receive damages as proportioned among them by the jury, or the court, *there is only one cause of action* for the recovery of these damages flowing from the death of the decedent.

2. An automobile insurance policy provision that limits recovery under the policy, for all damages due to bodily injury, including death from such injuries of one person to a single limit of liability, is a valid restriction of uninsured and underinsured motorist coverage and does not violate R.C. 3937.18.

3. Accordingly, in a claim for wrongful death under a policy of automobile insurance providing underinsured motorist coverage, the per-person limitation of liability applies to all damages sought by the personal representative of the decedent, regardless of the number of statutory beneficiaries who are also covered persons under the policy.

In Ohio, as in most other jurisdictions, a cause of action for wrongful death does not exist at common law, but rather is a right created by statute. As such, an action for wrongful death may be exercised only under the specific conditions imposed by the statute, *Rubeck* v. *Huffman* (1978), 54 Ohio St. 2d 20, 8 O.O. 3d 11, 374 N.E. 2d 411, one of which is legal status of the plaintiff as the personal representative of the deceased. Accordingly, R.C. 2125.02(A)(1) provides:

"*An* action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." (Emphasis added.)

In addition, the law recognizes wrongful death as a unique cause of action that is distinct and separate from rights which the decedent may have had for personal injuries. *Prem* v. *Cox* (1983), 2 Ohio St. 3d 149, 2 OBR 694, 443 N.E. 2d 511.

In principal support of their argument that each survivor of Gina L. Wood possesses a separate claim for damages, the appellants have relied upon the decision of this court in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 10 OBR 490, 462 N.E. 2d 396. The majority of the court in that case held that the father's claim, brought as representative of his minor son, and his own claim for loss of his son's services were separate and distinct claims. And, further, as separate claims, each may be asserted as a claim within the uninsured motorist coverage up to the full per-person policy limit even though the reasonable interpretation of the policy language prohibited such. In dissent, I disagreed with the majority as to such conclusion, stating at 163, 10 OBR at 496, 462 N.E. 2d at 402-403: "The policy permits an uninsured motorist claim being brought by Lewis for his personal losses. It also allows a representative action to be brought on behalf of the son for his injuries. However, the contract may lawfully and reasonably place a maximum limitation for which the company shall be liable under the contract for any and all such claims by any and all persons for the injury to one person in any occurrence."

This court later had occasion to ad-

dress the subject of single-limitation coverage where there are several claims being asserted for damages arising out of the bodily injury to one person. In *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, 521 N.E. 2d 789, the court agreed that certain language of insurance policies could be interpreted to allow separate uninsured motorist coverage for derivative actions; however, the issue before the court in that case, and parenthetically as it was in *Auto-Owners Mut. Ins. Co.* v. *Lewis*, was whether the policies allowed separate coverage for each action, and thence would allow the limit of coverage for each action. The majority of the court in *Dues* answered such query as had the dissent in *Auto-Owners*, by setting forth in paragraph two of the syllabus that "[a]n insurance policy provision that limits recovery for all causes of action arising out of bodily injury to one person to a single limit of liability is a valid restriction of uninsured motorist coverage."

Thus, the law of *Auto-Owners* is no longer available as a basis upon which a number of separate and distinct claims may be brought and may override separate limitations within uninsured motorist coverage for all damages due to bodily injury to one person.

Even during the period of the effectiveness of *Auto-Owners,* the appellants' argument that the per-person limit would be available in a wrongful death proceeding to each member of the family could not prevail. As pointed out previously herein, in Ohio only the legal representative of the decedent is empowered by statute to maintain an action for wrongful death. That individual is the sole possessor of a cause of action for the death of another, and separate and distinct claims do not exist on the part of the beneficiaries for whom a case may be instituted.

A number of appellate courts have considered and discussed this issue, and most have held that separate and distinct causes of actions based upon wrongful death may not be maintained under R.C. 2125.02. Accordingly, it was stated by the court of appeals in this case: "Likewise, we also reject the notion that Gina Wood's death somehow gave rise to independent causes of action for wrongful death on the part of Wood and the two children. To our thinking, such a position is *fundamentally irreconcilable with the basic nature of a wrongful death action as expressed in R.C. 2125.01 and R.C. 2125.02.*" (Emphasis added.) *Wood* v. *The Professionals Insurance Co.* (Dec. 22, 1986), Montgomery App. No. CA 9891, unreported, at 19-20.

In the case of *Dick* v. *Allstate Ins. Co.* (1986), 34 Ohio App. 3d 28, 516 N.E. 2d 1266, the court observed that to permit each surviving family member to assert a claim for wrongful death effectively ignored the language of the policy and established a new liability limit that was based not upon contractual terms, but rather upon the number of persons who qualified as insureds. In addition, the court interpreted the ruling of *Auto-Owners* and rejected the contention of the Dick estate that separate causes of action existed on behalf of each survivor:

"In our view, the rule of [*Auto-Owners* v.] *Lewis* must be read to extend logically to cases such as this involving underinsured, rather than uninsured, motorist coverage. It can only be given effect, however, as a basis for permitting more than one application of a given set of policy limits when a particular loss has resulted in separate and independent causes of action. That is clearly not the case here. Although each surviving member of Dick's immediate family may be entitled to receive damages as a result of the negligence of the underinsured mo-

torist, there is only one cause of action for the recovery of those damages under Ohio's wrongful death statute. R.C. 2125.02. We are convinced, therefore, that the 'each person' limitation of $100,000 cannot be invoked separately with respect to each family member claiming damages in this case, unless the terms of the policy itself specifically provide for the multiple application of coverages." (Footnote omitted.) *Id.* at 32, 516 N.E. 2d at 1269.

Contrary to these appellate decisions, I find that in *Gordon* v. *Nationwide Mut. Ins. Co.* (June 5, 1986), Delaware App. No. 86-CA-2, unreported, the court applied the holding in *Auto-Owners* v. *Lewis* without the benefit of this court's opinion in *Dues* overruling the second paragraph of the syllabus of *Auto-Owners,* and further, with no discussion in *Gordon* of the fundamental differences which exist between personal injury and derivative claims and those based upon wrongful death.

The language of the uninsured motorist statute (and the policy involved in this case) also dictates rejection of appellants' position. R.C. 3937.18 limits recovery to those individuals who are "legally entitled to recover damages." In a wrongful death situation, R.C. 2125.02 limits recovery of damages to the personal representative of the deceased individual. While surviving family members may be entitled to distribution of the proceeds of a wrongful death action, they have no right to recover damages against a tortfeasor.

The majority here has, also without good or lawful basis, rejected the applicable provisions of the policy. The policy issued to the Woods by Professionals contains the following limitation of liability for underinsured motorist coverage:

"The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one acci-

dent. This is the most we will pay regardless of the number of:

"1. Covered persons;

"2. Claims made;

"3. Vehicles or premiums shown in the Declarations; or

"4. Vehicles involved in the accident."

The language of the policy clearly provides that the $100,000 per-person limitation is the maximum obligation of the insurer for bodily injury sustained by one person. The conclusions of the majority are directly contrary to the clear language of the agreement, and the majority's position advocates that this court reject not only the terms of the policy, but also minimize the ability of parties to enter into contractual arrangements.

The position of the majority is also against the great weight of authority among other jurisdictions that have considered this issue. In numerous decisions, courts of several states have determined that the per-person limitation controls the amount of coverage available in a wrongful death claim regardless of the number of individuals seeking compensation.

In a recent case from Florida, *Mackoul* v. *Fidelity & Cas. Co. of New York* (Fla. App. 1981), 402 So. 2d 1259, the court considered policy language virtually identical to the limitation of liability expressed in the Professionals contract. In rejecting arguments by the plaintiff that the estate and two survivors were each entitled to maintain separate claims up to the aggregate per-accident limit, the court determined that the per-person liability figure governed all claims based upon the death of a single individual. Consequently, the court ruled that where the policy provided limits of $100,000 per person and $300,000 per accident, the former amount controlled for all damages arising from the death of one person, regardless of the num-

ber of claimants. A similar result was reached in *Florida Ins. Guaranty Assn.* v. *Cope* (Fla. App. 1981), 405 So. 2d 292, where the court likewise determined that the per-person limitation applied to all claims for the death of one individual.

Other cases demonstrate widespread rejection of the position of the majority. In *State Farm Mut. Auto. Ins. Co.* v. *Eubanks* (C.A. 5, 1986), 785 F. 2d 1346, the court rejected an argument that each surviving beneficiary of the decedent was entitled to recover up to the maximum per-accident limitation of the policy. Rather, the court determined the "each person" language incorporated in the contract referred to individuals injured in an accident, not surviving relatives with claims.

The discussion by the majority that the holding in *Dues* v. *Hodge, supra,* may be distinguished from the law to be applied here is sieve-like. The majority states: "The distinction is that *Dues* concerned bodily injury while this case concerns wrongful death, for which each survivor is *statutorily* afforded a separate claim for damages. For this reason, the holding of *Dues* has no application to this case." Clearly, the majority resolves the question to be decided by assuming it. It is somewhat satisfying that in at least some respect, however incorrectly, the majority recognizes the distinction that should be afforded the wrongful death statute herein. However, the majority, without any basis therefor, states that each survivor is statutorily afforded a separate claim for damages. So stating does not carry out the legislative intent of this section.

Additionally, the conclusion that *Dues* only applied to causes of action for bodily injury to one person and not to the resulting death of that person is completely unacceptable as not being based upon any reasonable interpretation of the verbiage of that opinion, nor of the policy provision there, or here. It is worthy of note in this regard to look to the commentary of the First District Court of Appeals in *Dick, supra,* on a similar position taken by the plaintiff administratrix in that case:

"Our holding is not affected by the absence of a specific reference to death in the wording of the 'each person' limitation as it appears in the underinsured motorist section of the policy. When the policy is read as a whole, it must be said that the limitation's general reference to 'all damages arising out of bodily injury to one person' fairly contemplates those cases in which the bodily injury has resulted in death. Any doubt in this respect is eliminated by operation of the separate provision specifically making the limits of underinsured motorist coverage equivalent to those in effect for general liability insurance. Once the comprehensive definition of the limits contained in the general-liability section of the agreement is properly taken into consideration, it becomes clear that the $100,000 limitation stated on the declarations page for bodily injury to each person applies in this case to 'all damages arising from bodily injury, sickness, disease, or *death* sustained by one person in any one occurrence.' (Emphasis added.)" *Dick, supra,* at 31-32, 516 N.E. 2d at 1269.

Accordingly, I would hold that the court of appeals was correct in concluding that the survivors of the insured decedent here had one collective claim for wrongful death, and that such combined claim may be limited to the single person's limit of liability in the insured's underinsured motorist policy. In that the majority has held otherwise, I herewith dissent from this portion of the opinion.

MOYER, C.J., and WRIGHT, J., concur in the foregoing opinion.