This is an accelerated calendar appeal. Appellants, Patricia Zabukovec, individually and as the administratrix of the Estate of Anthony Zabukovec, and Mark Zabukovec, appeal the judgment of the Lake County Court of Common Pleas which granted summary judgment on appellants' declaratory judgment action in favor of appellee, Farmers Insurance Company.[1] For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
The underlying facts to this appeal are not in dispute. Appellants' decedent, Anthony Zabukovec, and appellant Patricia Zabukovec were both severely injured in an automobile accident that occurred in Lake County on June 20, 1995. On that date, a vehicle driven by Carole DeHaas ("the tortfeasor") went left of center and hit the Zabukovec vehicle head-on. Anthony Zabukovec died several weeks later as a result of his injuries.
Grange Insurance Company insured the tortfeasor under a policy that carried liability limits of $300,000. Grange tendered its policy limits, and the probate court distributed the funds as follows: the Estate of Anthony Zabukovec received $290,000; Anthony Zabukovec received $5,000 for pain and suffering; and Patricia Zabukovec received $5,000 for her pain and suffering.
At the time of the accident, Patricia and Anthony Zabukovec were insured under a policy of automobile insurance issued by Farmers. Their son, appellant Mark Zabukovec, was also a covered insured because he resided with his parents at the time of the accident. Appellants' policy with Farmers provided underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident.
Patricia Zabukovec presented underinsured motorist claims to Farmers on behalf of herself and the estate. Mark Zabukovec also presented his own claim for the loss of his father. In response, Farmers paid Patricia Zabukovec the sum of $95,000. This represented its single per person policy limit of $100,000 minus the $5,000 she had already received from the tortfeasor's insurance provider for her pain and suffering. Farmers denied Mark Zabukovec's claim for the loss of his father. Farmers' rationale was that loss of consortium claims were included within its $100,000 per person limits, and the estate and his father individually had already jointly recovered from the tortfeasor an amount over the maximum of its per person limits of liability.
Appellants filed a complaint for declaratory judgment on June 19, 1997. In the complaint, appellants alleged that they were entitled to prevail on their claims because they were governed by the law in effect at the time that Farmers issued the subject policy, to wit: Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500
and former R.C. 3937.18.
However, appellants did not indicate exactly when the policy was issued, except to say that it was issued "in or about 1994." They further alleged that the policy was not renewed prior to the accident in June 1995. Thus, they contended that the amended version of R.C. 3937.18, enacted on October 20, 1994 as part of Am.Sub.S.B. No. 20, was not controlling. Appellants attached to the complaint a copy of their policy with Farmers; however, the policy did not contain a declaration page which would have indicated when the policy was originally issued and/or when the original policy would expire.
Farmers answered and then filed a motion for summary judgment in its favor. Farmers argued that the trial court was required to consider the law in effect at the time of the accident, pursuant to this court's decision in Hillyer v. Great. Am. Ins. Co. (Sept. 26, 1997), Lake App. No. 96-L-148, unreported, 1997 Ohio App. LEXIS 4360. In the alternative, Farmers argued that the policy was renewed on February 18, 1995.[2] As a result, Farmers argued that the amended version of R.C. 3937.18 applied to support their position in regards to appellants' claims.
Appellants responded and attached a copy of a six-month premium renewal notice. This document also indicated that the policy was renewed on February 18, 1995. However, it did not indicate when the policy was originally issued. Appellants argued this document was simply evidence of a premium renewal rather than evidence that the entire policy of insurance was renewed.
The trial court granted summary judgment in Farmers' favor based on the authority of this court's decision in Hillyer. The court did not address the factual issue of whether appellants' policy with Farmers was renewed at a time when the newly amended version of R.C. 3937.18 was controlling.
Appellants perfected a timely appeal, asserting one assignment of error:
 "The trial court erred in granting summary judgment in favor of Appellee Farmers Insurance Company by improperly holding that there was no coverage available to appellants under the underinsured motorist coverage in the Farmers policy issued to them."
On appeal, both parties agree that our decision in Hillyer is no longer good law and that the trial court erred in relying on it. Subsequent to the trial court's judgment in the instant case, the Supreme Court of Ohio reversed our decision in Hillyer on the authority of Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281.[3] See Hillyer v. Great Am. Ins.Co. (1999), 85 Ohio St.3d 410. The syllabus of Ross
reads:
 "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."
In Ross, the Supreme Court of Ohio was not faced with a situation where the claimants renewed their uninsured or underinsured liability policies after the effective date of the new amendments to R.C. 3937.18. Nevertheless, the Supreme Court offered guidance in this regard by approving of its earlier holding set forth in Benson v. Rosler (1985), 19 Ohio St.3d 41.Benson held, in pertinent part:
 "Statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." Id. at 44, citing 12 Appleman, Insurance Law and Practice (1981) 166, Section 7041.
In Benson, the policy of insurance at issue in that case contained anti-stacking language. At the time the policy was issued, the provisions were deemed contrary to public policy and without legal effect. Thereafter, legislative amendments were enacted to permit insurance providers to include such anto-stacking provisions in their policies. The question in Benson was whether the anti-stacking provisions were given new life and legal effect when the policy was renewed following the legislative amendments in favor of anti-stacking.
The Benson court answered that question in the affirmative, provided that the renewal represented a new contract of insurance separate and apart from the former policy. The rationale behind the decision was that the policy language was already in the former policy, and the subsequent amendments operated to bring the terms into compliance with the amended statute.
In order to determine whether the renewal represented a new contract of insurance, the Benson court looked first to the declaration page to determine whether the policy at issue in that case was a continuing policy or a term policy written for a specific period. The distinction was critical because any new statutory amendments that occurred during the life of a continuing policy would not be incorporated into the policy. Thereafter, the court looked to the express language of the policy itself to determine when the policy would terminate.
In light of the Supreme Court's holdings in Ross and Benson, the issue on appeal has thus turned to whether the activity which took place regarding appellants' policy with Farmers on February 18, 1995 constituted a new contract of insurance separate and apart from their initial policy. Appellants argue that it did not. Farmers argues that it did.
As previously indicated, although the parties provided the trial court with a copy of the policy of insurance, they both failed to indicate whether it was the original policy issued or a subsequent policy effective at the time of the renewal. Both also failed to provide the trial court with a copy of the original declaration page.
In Benson, it would appear that both the former declaration page and former policy were contained within the record before the court. In the case at bar, the record is silent as to whether the policy contained within the record is the original or subsequent policy. Moreover, the absence of the declaration page from the record presents another insurmountable problem. Under those circumstances, we choose to remand the case so that the trial court can revisit this factual issue with the appropriate submission of evidence. That decision will then dictate the trial court's final judgment.
Other appellate courts have similarly reversed and remanded the matter when the record is devoid of the documentation necessary to apply the Benson rationale to the facts of particular cases. SeeWodrich v. Farmers Ins. of Columbus, Inc. (May 21, 1999), Greene App. No. 98 CA 103, unreported, 1999 Ohio App. LEXIS 2269; Arnoldv. Ratcliff (Oct. 26, 1998), Ross App. No. 98CA2408, unreported, 1998 Ohio App. LEXIS 5244.[4]
Nevertheless, we offer the following guidance on remand. Appellants interpret R.C. 3937.31(A) to mean that a contract of insurance must continue for a minimum two-year period, and, thus, that such a contract is a continuing policy for the purposes of determining when and if statutory amendments become incorporated into a policy of insurance.[5] This section reads, in pertinent part: "Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." R.C. 3937.31(A).
However, the Benson court specifically rejected that argument, stating that policies, when written for specific periods, may be considered term policies rather than continuing policies. Benson
at 44. Several of Ohio's appellate districts have similarly rejected this argument and/or applied Benson to the cases before them. Newkirk v. State Farm Mut. Ins. Co. (June 1, 1999), Preble App. No. CA98-05-005, unreported, 1999 Ohio App. LEXIS 2483;Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98CA21, unreported, 1999 Ohio App. LEXIS 1862; Holcomb v. State Farm Ins.Cos. (Dec. 24, 1998), Franklin App. No. 98AP-353, unreported, 1998 Ohio App. LEXIS 6260; Farmer v. Deeds (Dec. 23, 1998), Licking App. No. 98CA00057, unreported, 1998 Ohio App. LEXIS 6498; Wolfev. Wolfe (Nov. 6, 1998), Montgomery App. No. 17111, unreported, 1998 Ohio App. LEXIS 5307, discretionary appeal allowed (1999),85 Ohio St.3d 1446. See, also, Arnold, supra.[6]
However, we note that even as we write this opinion, the Supreme Court of Ohio is reviewing the Wolfe decision from the Second Appellate District. Thus, the law may change yet again.
Finally, appellants argue that even if the amended version of R.C. 3937.18 should be deemed to be controlling over their claims, they are entitled to recovery pursuant to the decision of the Second Appellate District in Estate of Fox v. Auto-Owners Ins.
(June 12, 1998), Darke App. No. 1456, unreported, 1998 Ohio App. LEXIS 2581. Appellants claim that the Fox decision stands for the proposition that matching limits on the tortfeasors' insurance policy and the claimant's underinsurance policy do not necessarily defeat an underinsured motorist claim if the insured received less than full compensation for his or her losses. However, we decline to address this argument at this time. It is being raised for the first time on appeal, and the record is not complete for this purpose.
Nevertheless, the Fox case is not as broad as appellants appear to suggest. Instead, the case stands for the proposition that when a claimant does not receive full compensation from the tortfeasor's insurance provider, the claimant may turn to his underinsurance provider for the difference between what he recovered and the matching limits. By the same token, if the claimant already recovered the full amount of the matching limits from the tortfeasors' insurance provider, the claimant would be entitled to claim under his own underinsurance provision up to the limits of his own underinsurance coverage depending on the level of his actual damages. In other words, the injured party is entitled to recover the amount of damages which exceed the tortfeasor's liability limits up to the limits of his own underinsurance coverage. However, under these circumstances, the injured party cannot recover those damages he may have incurred which exceed his own coverage from his carrier.
In light of the foregoing analysis, appellants' sole assignment of error is well-taken. The judgment of the trial court is reversed, and the matter is hereby remanded for further proceedings consistent with this opinion.
 ___________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] Appellants incorrectly designated appellee's name on the complaint. Appellee is formally known as "Farmers Insurance of Columbus, Inc.," hereinafter referred to as "Farmers."
[2] In support of its motion, Farmers attached an affidavit from the claims adjuster dealing with appellants, Ben Morgan ("Morgan"). In the affidavit, Morgan simply stated that appellants' policy was renewed on February 18, 1995.
[3] Once again, the plaintiff misnamed Farmers.
[4] But, see, Spence v. Westfield Natl. Ins. Co. (Sept. 2, 1998), Monroe App. No. 797, unreported, 1998 Ohio App. LEXIS 4119 (relying on suggestions from the record to determine whether the renewal represented a new contract of insurance).
[5] Appellants incorrectly referenced this section as R.C. 3937.13(a) in their appellate brief.
[6] But, see, Wodrich, supra, questioning in dicta the wisdom of the Benson decision in regards to R.C. 3937.31. See, also,Townsend v. State Farm Mut. Auto. Ins. Co. (Aug. 14, 1998), Sandusky App. No. S-97-059, unreported, 1998 Ohio App. LEXIS 3687.